United States District Court
Southern District of Texas

**ENTERED**

April 01, 2016

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ELIE GIRIES,                          §
                                      §
    Plaintiff,                     §
                                      §
v.                                    §        CIVIL ACTION NO. H-14-1805
                                      §
HOWMEDICA OSTEONICS CORP.,            §
                                      §
    Defendant.                     §

<u>**MEMORANDUM OPINION**</u>

Pending before the court[1] is Defendant Howmedica Osteonics Corp.'s, d/b/a Stryker Orthopaedics,("Howmedica") Motion for Summary Judgment on Plaintiff's claims (Doc. 43) and Motion for Summary Judgment on its Affirmative Defenses and Counterclaims (Doc. 44).  The court has considered the motions, the response, all other relevant filings, and the applicable law.  For the reasons set forth below, the court **DENIES** Howmedica's motions.

### I.  Case Background

Plaintiff Elie Giries ("Giries") filed suit against his former employer to enforce a settlement agreement.

### A.  <u>Factual History</u>

Giries first worked for Howmedica between 2006 and 2012,

---

[1]    The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Docs. No. 29, 31.

before his position was eliminated.[2]  He was re-hired on April 1,

2012, to a previous position as a sales manager in Howmedica's

"trauma division."[3]  The trauma division sold orthopedic products

in trauma cases directly to orthopedic surgeons.[4]  As part of his

new employee paperwork, Giries signed a non-compete agreement on

April 4, 2012.[5]  The contract stated, in relevant part:

> Employee shall not, during the course of his/her
> employment with [Howmedica] and for a period of up to one
> (1) year . . . directly or indirectly, whether as a sole
> proprietor, partner, venturer, stockholder, director,
> officer, employee, consultant, agent or in any other
> capacity engage or participate in any employment or
> activity competitive with [Howmedica].  For purposes
> hereof, an "employment or activity competitive" with
> [Howmedica] shall be deemed to mean an employment or
> other activity which involves the manufacturing, selling,
> marketing, distributing or delivering of any orthopedic
> implant product or device if such product or device is
> competitive with and/or may be used in the same or
> similar applications as the products or devices
> manufactured, sold, marketed, distributed or delivered by
> [Howmedica].
>
> Employee shall not . . . for a period of up to one (1)
> year . . . engage or participate in any activity directed
> or designed to solicit or divert any of [Howmedica]'s
> customers and/or any individuals or entities that
> Employee contacted, targeted as a potential prospect or
> serviced, directly or indirectly, while in the employ of
> [Howmedica] in the Sales and Marketing Region
> (collectively, "[Howmedica]'s Customers") for Employee's

---

[2]     See Doc. 43-6, Ex. F to Def.'s Mot. for Summ. J., Depo. of Giries, p. 2-3.

[3]     See Doc. 45-1, Ex. A to Pl.'s Resp. to Def.'s Mot. for Summ. J., Decl. of Giries ¶ 3.

[4]     See id.

[5]     See Doc. 43-1, Ex. A-1 to Def.'s Mot. for Summ. J., Non-Compete Agreement signed Apr. 4, 2012.

or any [Howmedica]'s competitor's benefit.[6]

On June 15, 2013, Howmedica terminated Giries' employment.[7] Giries pursued legal action following his termination, and began negotiating a settlement with Howmedica in September 2013.[8]  Before the settlement was finalized, Giries received an offer to work for Tornier, Inc., ("Tornier") an orthopaedics company, beginning in October 2013.[9]

On September 25, 2013, Giries' attorney emailed Karen Tompkins ("Tompkins"), an attorney representing Howmedica, to inform her that Giries had been offered a position with Tornier.[10]  Tompkins responded that Tornier was a competitor in the sports medicine division and that "this position violates the terms of his non-compete if he would be selling Tornier products within his former Stryker sales territory and/or to customers that he or any rep reporting to him serviced during the last 12 months of his employment."[11]

On October 1, 2013, Giries signed a separation agreement and

---

[6]     See id.

[7]     See  Doc. 45-1, Ex. A to Pl.'s Resp. to Def.'s Mot. for Summ. J., Decl. of Giries ¶ 3.

[8]     See id. at ¶ 6.

[9]     See id. at ¶ 7.

[10]     See Doc. 43-1, Ex. A-5 to Def.'s Mot. for Summ. J., Lazarz email dated Sept. 25, 2013.

[11]     See Doc. 43-1, Ex. A-5 to Def.'s Mot. for Summ. J., Tompkins email dated Sept. 25, 2013.

release with Howmedica.[12]  The agreement stipulated that Howmedica would provide a severance totaling $175,230, made in seven payments, and would additionally pay Giries' attorneys' fees.[13] Giries agreed to waive all possible claims, and additionally acknowledged and affirmed the non-compete agreement he signed on April 4, 2012.[14]  The agreement stated that Giries understood that if he violated the terms of the non-compete, he would forfeit his right to any payment under the agreement.[15]  The agreement modified the original non-compete terms so that Howmedica would waive the non-compete provisions effective March 15, 2014.[16]

On October 3, 2013, Giries began his employment with Tornier.[17] At some during his employment with Tornier, Giries informed his supervisor that he had signed a non-compete agreement, and that he could not see any previous customers he had worked with while at Howmedica.[18]  During the first thirty days of his employment with Tornier, Giries primarily completed administrative paperwork,

---

[12]     See Doc. 43-1, Ex. A-1 to Def.'s Mot. for Summ. J., Separation Agreement signed Oct. 1, 2013.

[13]     See id. p. 1.

[14]     See id. pp. 2-4.

[15]     See id. p. 4.

[16]     See id.

[17]     See Doc. 43-5, Ex. E to Def.'s Mot. for Summ. J., Giries Interrog No. 7.

[18]     See Doc. 43-4, Ex. D to Def.'s Mot. for Summ. J., Depo. of Durham, pp. 35-36.

became familiar with Tornier's product portfolio, and attended training sessions.[19]

Howmedica made its initial payment and paid Giries' attorneys' fees.[20]  On October 17, 2013, Tompkins contacted Giries' attorney and told him that Giries had offered employment to an employee of Howmedica and was therefore in violation of his separation agreement.[21]  Giries' attorney responded that a recruiter, not Giries, had contacted the Howmedica employee.[22]  Tompkins stated that Giries was additionally seen communicating with a nurse employed by a doctor who was a Howmedica client.[23]  Giries' attorney contacted Tompkins and told her that Giries had not violated his agreement but had only spoken with the nurse in a social capacity.[24]

On October 18, 2013, Howmedica withdrew its initial payment from Giries' checking account by reversing its previous deposit.[25] Howmedica additionally demanded the return of Giries' attorneys'

---

[19]    See Doc. 45-1, Ex. A to Pl.'s Resp. to Def.'s Mot. for Summ. J., Decl. of Giries ¶ 10.

[20]    See Doc. 43-1, Ex. A to Def.'s Mot. for Summ. J., Decl. of Tompkins ¶16..

[21]    See Doc. 45-2, Ex. B to Pl.'s Resp. to Def.'s Mot. for Summ. J., Aff. of Lazarz ¶ 9.

[22]    See id. at ¶ 10.

[23]    See id.

[24]    See id.

[25]    See Doc. 45-1, Ex. A to Pl.'s Resp. to Def.'s Mot. for Summ. J., Decl. of Giries ¶ 11.

fees.[26]   Giries' attorney contacted Tompkins, informing her that Howmedica's withdrawal of payment constituted breach of the separation agreement.[27]

On October 23, 2013, the nurse Giries had spoken with emailed Giries' attorney confirming that she had met with Giries only to discuss personal topics and that her meeting with Giries was not in a professional capacity.[28]  On October 28, 2013, Giries' attorney forwarded the nurse's email to Tompkins, along with a statement that Giries intended to file suit for breach of the separation agreement and civil theft of the payment Howmedica had recouped.[29]

## B.  Procedural History

Giries filed this lawsuit on May 7, 2014, alleging breach of contract and civil theft.[30]  On June 27, 2014, Howmedica filed a notice of removal based on diversity jurisdiction under 28 U.S.C. § 1332(a).[31]  Howmedica filed an answer and counterclaim on July 3, 2014, alleging breach of contract, quantum meruit, fraudulent

---

[26]   See Doc. 43-1, Ex. A to Def.'s Mot. for Summ. J., Decl. of Tompkins ¶18.

[27]   See Doc. 45-2, 45-2, Ex. B, Attach. 2 to Pl.'s Resp. to Def.'s Mot. for Summ. J., Johnson email dated Oct. 23, 2013.

[28]   See Doc. id.

[29]   See Doc. 45-2, 45-2, Ex. B, Attach. 2 to Pl.'s Resp. to Def.'s Mot. for Summ. J., Lazarz email dated Oct. 28, 2013.

[30]   See Doc. 1-1, Ex. A to Def.'s Notice of Removal, Pl.'s Original Pet.

[31]   See Doc. 1, Def.'s Notice of Removal p. 3.

inducement, and attorneys' fees.[32]

Howmedica filed a motion for summary judgment on February 12, 2016.[33]  It additionally filed a motion for summary judgment on its counterclaims.[34]  Giries filed a response to Howmedica's motions on March 4, 2016.[35]  On March 16, 2016, Howmedica filed a reply in support of its motion, and on March 22, Giries filed a surreply.[36]

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could

---

[32]    See Doc. 3, Def.'s Answer & Countercl., pp. 7-8.

[33]    See Doc. 43, Def.'s Mot. for Summ. J.

[34]    See Doc. 44, Def.'s Mot. for Summ. J. on its Affirmative Defenses & Countercls.

[35]    See Doc. 45, Pl.'s Resp. to Def.'s Mot. for Summ. J.

[36]    See Doc. 47, Def.'s Reply in Support; Doc. 48, Pl.'s Surreply to Def.'s Mot. for Summ. J.

resolve the issue in favor of either party.  <u>Anderson</u>, 477 U.S. at 250; <u>Piazza's Seafood World, LLC v. Odom</u>, 448 F.3d 744, 752 (5th Cir. 2006).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  <u>Celotex Corp.</u>, 477 U.S. at 323; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment.  <u>Celotex Corp.</u>, 477 U.S. at 322.  However, if the party opposing summary judgment responds with evidence in support of each challenged element, the case must be resolved at trial.  <u>Id.</u> at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party."  <u>Evans v. City of Houston</u>, 246 F.3d 344, 348 (5th Cir. 2001); <u>see also</u> <u>Boston Old Colony Ins. Co. v. Tiner Assocs. Inc.</u>, 288 F.3d 222, 227 (5th Cir. 2002).  The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence."  <u>Honore v. Douglas</u>, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some

metaphysical doubt as to the material facts." <u>Matsushita Elec.</u>
<u>Indus. Co. v. Zenith Radio</u>, 475 U.S. 574, 587 (1986).  Conclusory
allegations, unsubstantiated assertions, improbable inferences,
unsupported speculation, or only a scintilla of evidence will not
carry this burden.  <u>Brown</u>, 337 F.3d at 541; <u>Ramsey v. City of</u>
<u>Henderson, Tex.</u>, 286 F.3d 264, 269 (5th Cir. 2002).

### III. Analysis

Before addressing the merits of the motions, the court turns
to Howmedica's objections to Giries' summary judgment evidence.

### A.  Howmedica's Objections to Giries' Evidence

Giries' response to Howmedica's motion for summary judgment
includes a declaration by Giries and an affidavit from his
attorney.[37]   Howmedica objects to several of Giries' and his
attorney's statements, arguing that they contain hearsay,
conclusory statements, speculation, and legal conclusions.[38] Giries
responds that both the declaration and affidavit are competent
summary judgment evidence.[39]

Federal Rules of Civil Procedure ("Rule") 56(c)(4) governs the
submissions of declarations and affidavits.  Under the rule, an
affidavit must be made on personal knowledge, set out facts that

---

[37]     <u>See</u> Doc. 45-1, Ex. A to Pl.'s Resp. to Def.'s Mot. for Summ. J.,
Decl. of Giries; 45-2, Ex. B to Pl.'s Resp. to Def.'s Mot. for Summ. J., Decl.
of Lazarz.

[38]     <u>See</u> Doc. 47, Def.'s Reply in Support p. 1

[39]     <u>See</u> Doc. 48, Pl.'s Surreply to Def.'s Mot. for Summ. J. p. 2.

would be admissible, and show that the affiant is competent to testify on the matters stated.  Fed. R. Civ. Pro. 56(c)(4).

Howmedica objects to Giries' statement in paragraph four where Giries states that he was told by a Howmedica general manager that his "territory" was made up of the specific physicians to whom he sold equipment on the grounds that the statement is hearsay and conclusory.[40]  Giries responds that the statement is admissible because it is within the scope of his personal knowledge and because the statement is an admission by a party-opponent under Rule 801(d)(2).  Fed. R. Evid. 802(d)(2)(B).   The court agrees that the statement is offered against an opposing party and was made by an individual who was authorized to make the statement; Howmedica's objection to paragraph four is **OVERRULED** pursuant to Rule 801(d)(2)(C).

Howmedica objects to Giries' statements in paragraph five on the grounds that it contains legal conclusions regarding the language of the non-compete agreement.[41]  Giries responds that the declaration is based on personal knowledge and is therefore admissible.[42]  The court finds that Giries' opinions concerning his understanding of what the contract means is not relevant.  The court will interpret the contract.  Howmedica's objection on this

---

[40]      Doc. 47, Def.'s Reply in Support p. 1.

[41]      Id. p. 2.

[42]      See Doc. 48, Pl.'s Surreply to Def.'s Mot. for Summ. J. p. 2.

ground is therefore **SUSTAINED**.

Howmedica objects to paragraphs eight, nine, and twelve of Giries' declaration because they contain conclusory statements not supported by facts.[43]  Giries' statements regarding his specific efforts to not violate the agreement are based on his personal experience and do not attempt to aver that he did not breach the contract.  They therefore do not represent his opinion regarding any ultimate issue and the court does not rely on them in any way. Howmedica's objections to these paragraphs are **OVERRULED**.

Howmedica also objects to Giries' statement that Howmedica suffered no harm as a result of his employment with Tornier. Because Giries has no personal knowledge of actual or potential losses by Howmedica, this is speculation and therefore inadmissible pursuant to Rule 602.  See Fed. R. Evid. 602.  The court **SUSTAINS** Howmedica's objection to paragraph fourteen.

Finally, Howmedica objects to Giries' statement that the products that he sold at the Texas Orthopedic Hospital were not competitive with what he sold at Howmedica or any product Howmedica sold because the statement is based on speculation.[44]  Giries responds that he has personal knowledge of the products he sells for Tornier and the products he sold for Howmedica.[45]  Because

---

[43]     Doc. 47, Def.'s Reply in Support p. 2.

[44]     Id.

[45]     See Doc. 48, Pl.'s Surreply to Def.'s Mot. for Summ. J. p. 3.

Giries states in his declaration that he is aware of the products he previously sold for Howmedica and the products that Howmedica generally sold, the court finds Giries has personal knowledge supporting his declaration.  Howmedica's objection is therefore **OVERRULED** with respect to paragraph seventeen of Giries' declaration.

Howmedica also objects to a paragraph within Giries' attorney's affidavit and to an attachment thereto, on the grounds that each constitute hearsay.[46]  The paragraphs contain Giries' attorney's account of sending an e-mail to Tompkins and includes a statement that the attorney told Tompkins that Giries would not call on the same customers that he called on while at Stryker. Howmedica also objects to attachment one of Giries' attorney's declaration, which is a communication with Tompkins regarding Giries' job offer at Tornier. To the extent that these statements are offered for the truth thereof, the court agrees that they are hearsay and will not consider them. Accordingly, Howmedica's objections to the declaration of Giries' attorney are **SUSTAINED.**

B.   <u>Howmedica's Motions for Summary Judgment</u>

Howmedica argues that it is entitled to summary judgment on Giries' claims and its counterclaims because Giries breached his separation agreement by accepting a position with Tornier.  Giries responds that he did not breach the contract by working for Tornier

---

[46]     Doc. 47, Def.'s Reply in Support p. 2.

and that Howmedica has not produced any evidence of a breach of contract prior to Howmedica's breach in October 2013.  The court will consider the parties' arguments in turn.

Howmedica contends that Giries cannot establish a breach of contract claim because he breached the settlement agreement's non-compete provisions by accepting a position at Tornier in October 2013, relieving Howmedica of any duty to pay under the agreement.

A settlement agreement is a contract and thus is governed by Texas contract law.  White Farm Equip. Co. v. Kupcho, 792 F.2d 526, 530 (5th Cir. 1986).  Absent any ambiguity in the terms or any factual issue with regard to agreement, the interpretation of a settlement agreement can be decided as a matter of law.  E. Energy, Inc. v. Unico Oil & Gas, Inc., 861 F.2d 1379, 1380 (5th Cir. 1988). An agreement is ambiguous only if, in light of the surrounding circumstances, it is reasonably susceptible to more than one meaning.  Mid-Continent Cas. Co., 205 F.3d at 231.

The settlement agreement signed by Giries on October 1, 2013, acknowledged and affirmed the non-compete agreement between Giries and Howmedica signed on April 1, 2012.  The agreement stated that "employee understands and agrees that [Howmedica] may collect from him, and that the Employee must forfeit to [Howmedica], the payments identified . . . if the Employee fails to comply with the

commitments and obligations as set forth in this Agreement."[47]
Therefore, if Giries violated his non-compete agreement, he is not
entitled to recover under the separation agreement.

Howmedica contends that Giries breached the agreement as a
matter of law by accepting a position with Tornier, because such
action violated Sections B(1)(a) and B(1)(b)(i) of the non-compete
agreement.  Giries responds that his employment with Tornier did
not breach the non-compete agreement prior to Howmedica's material
breach on October 18, 2013.

Section B(1)(a) of the non-compete agreement states that a
current or former employee shall not "engage or participate" in any
activity which involves the selling, manufacturing, marketing,
etc., of any orthopedic implant if such a device is competitive
with or may be used in the same or similar applications as products
sold, marketed or distributed by Howmedica.[48]   Howmedica
characterizes this contract term as a bar on Giries' employment by
a company that makes competing products, noting that Tornier is a
competitor of Howmedica as it relates to its foot and ankle
implants.[49]  However, the plain language of the contract states that
*Giries* may not sell, develop, or otherwise promote a product

---

[47]    See Doc. 43-1, Ex. A-1 to Def.'s Mot. for Summ. J., Separation
Agreement signed Oct. 1, 2013 p. 4.

[48]    See id, Non-Compete Agreement signed Apr. 4, 2012 p. 4.

[49]    See Doc. 43, Def.'s Mot. for Summ. J. Fn. 33.

competitive to Howmedica's competing product.[50]

Giries has produced evidence that he did not sell products competitive with Howmedica: in his deposition he stated that he primarily sold shoulder implants, and that Howmedica did not sell a competitive product.[51]  In his declaration, Giries stated he did not sell products competitive with those he sold at Howmedica or that Howmedica sold.[52]  Howmedica has produced no evidence to contravert Giries' evidence that he did not sell a competitive product.  Howmedica has alleged in its motion only that Tornier is a competitor with respect to its foot and ankle implants, products for which Giries has offered evidence that he did not sell.  Howmedica has not proven as a matter of law that Giries breached Section B(1)(a) of the non-compete agreement because it has not produced evidence that Giries actually sold products competitive with Howmedica.

Howmedica additionally argues that Giries violated Section B(1)(b)(i) of the non-compete agreement by working in the same geographic territories he worked at previously and by having sales representatives he directly supervised contact physicians he worked

---

[50]    See Doc. 43-1, Ex. A-1 to Def.'s Mot. for Summ. J., Non-Compete Agreement signed Apr. 4, 2012.  The plain language of the contract restricts "employee" from selling or developing a competitive product.

[51]    See Doc. 45-6, Ex. F to Pl.'s Resp. to Def.'s Mot. for Summ. J., Depo. of Giries pp. 66-68.

[52]    See Doc. 45-1, Ex. A to Pl.'s Resp. to Def.'s Mot. for Summ. J., Decl. of Giries ¶ 8.

with in his previous position.  Section B(1)(b)(i) states that an
employee shall not "engage or participate in activity that is
designed to solicit or divert any of [Howmedica]'s customers,"
serviced either indirectly or indirectly during his time working
for Howmedica, either for his own purpose or on behalf of a
competitor.[53]  The "geographic area" of the provision is limited to
the sales and marketing region Giries had responsibility for in the
last twelve months of his work with Howmedica.[54]

Howmedica argues that it has proven Giries breached the non-
compete agreement because it has produced evidence he worked in the
same geographic region and the same hospitals he worked at while he
was employed by Howmedica.  Giries does not contest that he worked
in the same "geographic area" of southern and eastern Texas, Giries
argues that he did not violate Section (B)(1)(b)(I) because he did
not contact Howmedica's customers.[55]  Giries explained in his
declaration that fifteen-to-twenty orthopedic physicians worked
independently at the Texas Orthopedic Hospital.[56]  Giries has
offered evidence that his "customers" were not hospitals, but
specific physicians, and that he did not contact any physicians he

---

[53]    See Doc. 43-1, Ex. A-1 to Def.'s Mot. for Summ. J., Non-Compete
Agreement signed Apr. 4, 2012 pp 4-5.

[54]    See id. p. 5.

[55]    See Doc. 45-1, Ex. A to Pl.'s Resp. to Def.'s Mot. for Summ. J.,
Decl. of Giries ¶ 9.

[56]    See id. ¶ 17.

previously interacted with during the period of the non-compete agreement.[57]   Although the non-compete agreement does not define "customers," it does state that in consideration for signing the noncompete agreement, Giries would be provided information concerning Howmedica's customers, including customer lists.[58] Giries declaration stated that he was provided such a list of physicians in exchange for agreeing to sign the non-compete agreement.[59]

The court finds Giries' interpretation of "customers" as the specific physicians he serviced to be reasonable.   The Supreme Court of Texas has previously found it unreasonable to apply a non-compete agreement to potential customers with whom an employee had no pre-existing relationship.   See Peat Marwick Main & Co. v. Haass, 818 S.W.2d 381, 387-88 (Tex. 1991).   A reasonable interpretation of the non-compete prevented Giries from communicating with physicians that he actually serviced during his last year at Howmedica.   Howmedica has produced no evidence that Giries actually contacted a physician he serviced during his previous employment during his work at Tornier.

---

[57]     See id. ¶¶ 3, 17 ("the Trauma Divisioin is a specialized Divisions which sells orthopedic products involved in trauma cases to orthopedic surgeons;" "I sold different products to different orthopedic physicians at the Texas Orthopedic Hospital than I did at [Howmedica].")

[58]     See Doc. 43-1, Ex. A-1 to Def.'s Mot. for Summ. J., Non-Compete Agreement signed Apr. 4, 2012 p. 2.

[59]     See Doc. 45-1, Ex. A to Pl.'s Resp. to Def.'s Mot. for Summ. J., Decl. of Giries ¶ 4.

Howmedica instead relies on the deposition testimony of Donald Durham, Giries' supervisor at Tornier, who stated that if Giries told him that he could not contact a doctor directly because of his noncompete, that one of Giries' sales representatives should contact that doctor instead.[60]  Howmedica states that this conduct would breach Section (B)(1)(b)(i) of the non-compete agreement. The non-compete agreement states that Giries may not, directly or indirectly, attempt to solicit any customer he contacted or serviced while employed by Howmedica; it does not state that Giries' future employer is barred from maintaining preexisting client relationships.  Even if Howmedica could prove that Tornier in fact contacted any individuals Giries previously contacted, Howmedica offers no evidence that this actually occurred at some point before March 15, 2014, when the non-compete expired.

Further, Howmedica offers no evidence that Giries committed any affirmative act constituting a breach before the withdrawal of the first payment under the separation agreement.  The court finds that Howmedica has failed to show as a matter of law that Giries breached the separation agreement at some point between his signing on October 1, 2013, and October 18, 2013.

Howmedica's argument that Giries cannot establish a civil theft claim and its counterclaim for breach of contract both rely on its assertion that it has proven that Giries breached the

---

[60]      See Doc. 43-4, Ex. D to Def.'s Mot. for Summ. J., Depo. of Durham.

separation agreement as a matter of law.  Because it has failed to do so, the court **DENIES** these summary judgment on these claims.

Howmedica additionally moves for summary judgment on its fraudulent inducement claim.  Howmedica argues that Giries knowingly made a material misrepresentation when he stated that he understood he would not be able to work in his former sales territory for nine months, that Howmedica relied on the misrepresentation, and that it suffered damage in the form of the attorneys' fees it was unable to reclaim from Giries or his attorney.

Under Texas law, fraudulent inducement is "a particular species" of fraud claim that requires proof of "the elements of fraud as they relate to an agreement between the parties." Haase v. Glazner, 62 S.W.3d 795 (Tex. 2001).  A failure to perform contractual obligations is not proof of fraudulent inducement but of breach of contract.  Kevin M. Ehringer Enters., Inc. v. McData Servs. Corp., 646 F.3d 321 (5th Cir. 2011).  A claimant must show a breach and evidence that the promisor never intended to perform under the contract.  Id.

Here, Howmedica has not offered any evidence that Giries never intended to perform under the contract.  Howmedica's only proffered evidence is an email exchange wherein Giries' attorney stated that Giries understood that he would not be permitted to work in his

former sales territory for nine months.[61]  However, even if this was evidence that Giries did not intend to perform, Howmedica has not proven as a matter of law that Giries actually breached the contract before it reversed the payment to Giries.  Because fraudulent inducement requires evidence of both intent to fraud and a breach of contract, the court **DENIES** Howmedica's motion for summary judgment on this counterclaim.

## IV.  Conclusion

Based on the foregoing, the court **DENIES** Howmedica's motion for summary judgment regarding Giries' claims (Docs. 43) and Howmedica's counterclaims (Doc. 44).

All claims will be set for trial.

**SIGNED** in Houston, Texas, this 1<u>st</u>  day of April, 2016.

_____
U.S. MAGISTRATE JUDGE

---

[61]     <u>See</u> Doc. 43-1, Ex. A-3 to Def.'s Mot. for Summ. J., email dated Oct. 2, 2013.